Cite as 2024 Ark. App. 140

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CR-22-787

|  |  |  |
|---|---|---|
| GLENN ROBERT LEMA | | **Opinion Delivered** February 28, 2024 |
| | APPELLANT | APPEAL FROM THE YELL COUNTY CIRCUIT COURT, SOUTHERN DISTRICT |
| V. | | [NO. 75SCR-21-30] |
| STATE OF ARKANSAS | | HONORABLE JERRY DON RAMEY, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## RITA W. GRUBER, Judge

Glenn Robert Lema was convicted by a jury on four criminal counts: (1) possession of methamphetamine, heroin, or cocaine with purpose to deliver; (2) possession of drug paraphernalia; (3) possession of a Schedule I controlled substance with purpose to deliver; and (4) terroristic threatening. He was convicted on all charges.[1] Lema now appeals, raising two points. He challenges the circuit court's admission of evidence about a subsequent bad act and the denial of his motions for a directed verdict.

---

[1]The sentencing order reflects that Lema was sentenced to concurrent terms of 96 months' imprisonment on Count No. 1 and 48 months' imprisonment on Count No. 2. The sentencing order reflects "fine only" for Counts Nos. 3 and 4, and a total amount of $17,500 in fines. The order does not reflect the circuit court's oral pronouncement of separate amounts for each conviction: $10,000 for Count No. 1, $4000 for Count No. 2, $1000 for Count No. 3, and $2500 for Count No. 4.

For purposes of double jeopardy, we first review the denial of a motion for directed verdict. *Dixon v. State*, 2011 Ark. 450, at 8, 385 S.W.3d 164, 171. A motion for directed verdict is a challenge to the sufficiency of the evidence. *Id.* When the sufficiency of the evidence is challenged on appeal, we consider only the evidence that supports the verdict and affirm if substantial evidence supports it. *Id.* Substantial evidence is evidence of such sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resort to speculation or conjecture. *Green v. State*, 2013 Ark. 497, at 5, 430 S.W.3d 729, 736. We need only consider the testimony supporting the verdict of guilty. *Id.* Circumstantial evidence may provide a basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* Whether the evidence excludes every other hypothesis is left to the jury to decide, and credibility of witnesses is an issue for the jury. *Id.*

Lema was locked out of his apartment in the early morning hours of April 16, 2021. Residents of the apartment complex had been notified previously that monthly pest-control treatments were scheduled for that day. Around 2:00 a.m., hoping to get his door unlocked, Lema knocked and yelled at the apartment manager's front door and window. He got no response from the manager, Efrain Ramos,[2] or Ramos's wife. Around 8:30 a.m., Lema approached Ramos while he was accompanying Paul Newport, who had come to perform the pest-control treatment. Ramos said he would not unlock Lema's door until he and

_____
[2]A language interpreter assisted Ramos at trial.

Newport got to that apartment. Ramos, perceiving that Lema was threatening him, called the police.

When Ramos opened Lema's apartment door, Newport saw a glass pipe and white residue. Newport believed the items to be drugs and drug paraphernalia because of his experience with his brother's drug addiction. Lieutenant Tommy Broadstock and Chief Rick Padgett of the Danville Police Department had arrived at the apartment complex by that time. Broadstock arrested Lema for making threats and put him in a patrol car. Padgett went to Lema's apartment at his request to get his blood-pressure medication. Newport directed Padgett's attention to the items he had seen. Lema signed a consent to search, writing on the form, "I don't know what the manager put in my APT." Lema denied ownership of the drugs and paraphernalia, claiming that someone else had put them there. Subsequent testing revealed the presence and quantity of methamphetamine and marijuana found in his apartment.

Ramos testified at trial that Lema shouted aggressively at Ramos and his wife, frightening both of them, and later threatened to shoot Ramos. Lema testified in his own defense, disputing Ramos's testimony and suggesting that an unknown person put the drugs and paraphernalia in his apartment while he was away.

Lema stated, "I don't do drugs. I don't sell drugs. I don't carry drugs." On cross-examination the prosecutor asked, "Now, your position is, that you're not a drug user?" Lema answered, "That's correct." The prosecutor continued, "But yet, you were arrested three months later."

Defense counsel objected that Lema's subsequent arrest, which occurred when methamphetamine was found in a car Lema was driving, was inadmissible because it was character evidence and prejudicial. The circuit court conducted a bench conference and sustained the objection in part, agreeing that the prejudicial value of the subsequent arrest outweighed any probative value, but allowed the prosecutor to question Lema further about the incident.

In open court, before further questioning, Lema interjected, "Your Honor, I don't mind answering his question[.]" He proceeded to explain that there were other occupants in the car, and he asserted that a passenger claimed possession of the methamphetamine. Yell County Sheriff's Deputy Hayden Whorton testified in rebuttal that he made the traffic stop on August 7, 2021 (almost three months after Lema's arrest in the current case) and found methamphetamine in a small plastic container on the driver's-side floorboard.

Lema moved for a directed verdict at the close of the State's case and renewed his motion at the close of all the evidence. He contended that the State had not introduced sufficient evidence of actual or constructive possession of methamphetamine, marijuana, or drug paraphernalia. He argued that he did not have exclusive possession of the apartment and noted that he was not there when the drugs were found. The circuit court denied each motion for directed verdict.

The State is not required to prove literal physical possession of the contraband; we look to see whether the contraband was located in a place under the accused's dominion and control. *Terry v. State*, 2018 Ark. App. 435, at 4, 559 S.W.3d 301, 304. Constructive

4

possession can be implied when the contraband was found in a place immediately and exclusively accessible to the accused and subject to the accused's control. *Id.* To prove constructive possession, the State must establish that the accused exercised "care, control, and management over the contraband." *Id.* Additionally, there must be some evidence that the accused had knowledge of the presence of the contraband. *Id.*

Constructive possession may be established by circumstantial evidence. *Id.* Control over and knowledge of the contraband can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, the ownership of the property where the contraband is found, and the accused's suspicious behavior. *Id.* at 4– 5. Location of the contraband in close proximity to the accused can be a sufficient linking factor to support constructive possession, and the improbable nature of the accused's explanations can be considered. *Id.* at 5.

Lema argues that there was no evidence that he knew of the presence of methamphetamine, marijuana, or drug paraphernalia in his apartment. He claims that there was insufficient evidence that he possessed those items, and he suggests they were placed in the apartment by another person. He points to testimony that he had been locked out for several hours and was not there when the items were found.

Viewed in the light most favorable to the State, the evidence is as follows. Lema had been notified ahead of time that pest-control treatment would take place on April 16. He exhibited suspicious behavior early that morning after finding himself locked out of his apartment. Hoping to regain access, he went to the manager's apartment around 2:00 a.m.;

despite yelling and beating on the front door and window, he got no response from either the manager or his wife. Around 8:00 a.m., Lema threatened the manager when he refused to unlock Lema's apartment before taking the pest-control employee there to begin treating it for pests. After Lema was arrested for threatening behavior, he asked for the blood-pressure medicine that was in his apartment. He consented to a search of the apartment but wrote on the consent form that he did not "know" what the manager had put in his "APT." The manager and the pest-control employee saw drugs and drug paraphernalia on the coffee table when the manager opened the door, and Police Chief Padgett saw the items when he arrived. Lieutenant Broadstock and Padgett found drug paraphernalia and items containing drugs or with residue throughout the apartment: the items were sitting out in the living room, under the living-room-couch cushion, in the hall closet, and in the kitchen.

The jury could reasonably have found that Lema's aggressive attempts to regain entry before the door was opened for pest-control treatment negated his hypothesis that someone else with access to his apartment had placed the contraband there. The location of the contraband within the apartment where Lema was the sole occupant constituted a linking factor sufficient to support his constructive possession of the items. His arguments go to the weight of the evidence and the credibility of witnesses, which were matters for the jury to decide. We hold there was substantial evidence for the jury to find that Lema possessed the drugs and drug paraphernalia.

Lema also contends that the circuit court abused its discretion by allowing the State to cross-examine him about a traffic stop involving methamphetamine subsequent to the

6

incident that led to charges in the present case. Under Arkansas Rule of Evidence 404(b), "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

As recited earlier in our opinion, Lema's counsel objected at trial when the prosecutor began to cross-examine Lema about the subsequent incident involving drugs. The circuit court sustained the objection in part, allowing the prosecutor to question Lema further about possessing methamphetamine but barring questions about his arrest in that incident. Lema volunteered in open court, "Your Honor, I don't mind answering his question." There was no further objection, and the prosecutor proceeded to question Lema about the subsequent incident.

When a question previously objected to is repeated, and there is no second objection, the matter is waived on appeal. *Vaughan v. State*, 338 Ark. 220, 225, 992 S.W.2d 785, 788 (1999). Here, Lema's statement that he would answer the State's question, coupled with no further objection, amounted to a waiver of his initial objection. *See, e.g.*, *Hefley v. State*, 281 Ark. 324, 325, 663 S.W.2d 732, 732 (1984) (holding that a withdrawn objection is a waiver); *see also Bates v. State*, 271 Ark. 699, 610 S.W.2d 257 (1981) (holding that when an objection is withdrawn, it is as if the objection was never made); *cf. Beare v. State*, 2010 Ark. App. 544, at 6 (holding that it is proper to overrule an objection by an appellant's counsel if the appellant expresses a willingness to answer the question despite the objection).

Lema, over his counsel's initial objection, elected to answer the State's questions. He cannot now complain on appeal.

Affirmed.

GLADWIN and BARRETT, JJ., agree.

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.